**Emmy AUSTIN and William L. Austin, Sr., As Next of Kin of William L. Austin, Jr., Deceased, Plaintiffs-Appellants,**

v.

**CITY OF MEMPHIS, Tennessee, County of Shelby, et al., Defendants-Appellees.**

Court of Appeals of Tennessee, Western Section, at Jackson.

Aug. 21, 1984.

Application for Permission to Appeal Denied Dec. 31, 1984.

G. Wynn Smith, Patrick M. Ardis and Thomas J. Walsh, Jr., Memphis, for plaintiffs-appellants.

Robert J. Ames, Sr. Asst. Atty. Gen., William M. Leech, Jr., Atty. Gen., Nashville, for State of Tenn.

Thomas F. Johnston, Carl H. Langschmidt, William M. Walsh, Robert D. Flynn and Joe D. Spicer, Carroll C. Johnson, Eugene C. Gaerig, James R. Garts, Jr., Memphis, for defendants-appellees.

CRAWFORD, Judge.

This is an appeal by plaintiffs from the judgment of the trial court on a jury verdict for the defendants. Plaintiffs, Emmy Austin and William L. Austin, Sr., parents and next of kin of William L. Austin, Jr., deceased, sued the defendants for the wrongful death of their son resulting from the collapse of the Perkins Road Bridge in Memphis, Tennessee, on March 16, 1980. The State of Tennessee and Chickasaw Basin Authority as a corporate body were originally named as defendants, but were dismissed on defendants' motion prior to trial. Also sued were the City of Memphis and County of Shelby, but the suit against these parties was severed for a separate trial by the court and is not involved in this appeal. See 640 S.W.2d 852.

On the night of March 16, 1980, during a period of heavy rains, plaintiffs' decedent was driving his automobile in a northerly direction on Perkins Street in Memphis, Tennessee. He was in the process of traversing the four-lane concrete Perkins Street Bridge over Nonconnah Creek when a part of the bridge on the eastern-most, or upstream side, collapsed. His vehicle fell into the Nonconnah Creek and his death resulted. The seminal issue in the case centered on the question of causation of the bridge collapse. The trial was described by plaintiffs in their brief as a "classic battle of experts" on this issue.

The private citizen defendants involved in this appeal were in various ways connected with "borrow operations" (removal of dirt) from in and around the Nonconnah Creek bed downstream from the bridge. These operations began approximately in 1973, and at various times continued until shortly before the bridge collapsed. The allegations against these defendants in the "conformed restated complaint" are in part:

\* \* \* \* \* \*

31. Beginning in 1973 borrow operations were undertaken downstream from the Bridge by and for the benefit of Perkins and Mall.

32. Said borrow operations were performed with the approval of the state, the Chickasaw Basin Authority, the county and the City.

33. The borrow operations were performed under contract with Dancy, Construction Aggregates and Lehman-Roberts, individually or as a joint venture and Folk, Meccon and Chancellor, individually and as joint venture.

34. Pollard Consultants and Pollard individually acted as consultants for Perkins and Mall and assured State, County, and City (as well as Perkins and Mall) that the aforesaid dredging operations would not endanger the Bridge and that there was no necessity to stabilize the Nonconnah Creek bed with such devices as gabions, paved flumes or concrete slurry cut-off walls, etc.

35. The aforesaid borrow operations ultimately removed in excess of 1,000,000 cubic yards of fill from Nonconnah Creek bed in close proximity to, and downstream from, the Bridge. This fill was used for the benefit of Mall and Perkins to build up the elevation of the area adjacent to Nonconnah Creek where they jointly proposed to construct a shopping center.

36. These borrow operations caused a widening and deepening of Nonconnah Creek and resulted in an increased velocity of water flow eroding and causing instability of the creek.

37. The Defendants specifically named in numbered paragraphs *30* through *34* above knew, or in the exercise of reasonable care should have known, that the aforesaid dredging operations and/or grading, drainage channelling, and/or other earth-moving operations on the Mall of Memphis project were endangering the Perkins Bridge; but, nevertheless, they negligently continued or allowed to continue such operations in reckless disregard of the obvious danger to the life and property of persons lawfully using the Bridge, and, with full knowledge of the instability of the creek bed caused by the dredging and/or other earth-moving operations, negligently failed to take proper corrective measures to safeguard the Bridge.

\* \* \* \* \* \*

52. The collapse of the Bridge directly and proximately was caused by each of the following:

A) The erosion of the creek bed underneath the Bridge due to the downstream borrow operations; and

B) The combined action of the erosion of the creek bed due to the aforesaid borrow operations and accumulated debris and the increased force exerted on the Bridge due to the congestion of debris.

The conformed restated complaint continues with specific allegations against the individual private defendants:

58. Pollard Consultants and Pollard individually, as hired expert engineering consultants for Mall and Perkins, were negligent in that they advised their said client (and represented and assured the City, County, Chickasaw Basin Authority, and State) that the downstream borrow operations herein alleged could be performed without endangering the Perkins Bridge and without the necessity of stabilizing the Nonconnah Creek bed, when they knew, or, in the exercise of that degree of skill and care normally exercised by other such expert consultants under similar circumstances, should have known, that such advice and assurances were false and in error, thereby causing the alleged dredging operations to be undertaken and continued without proper stabilization of the Nonconnah Creek bed sufficient to avoid structural damage to the Perkins Bridge.

59. Mall, Perkins, Hahn, Stanley H. Trezevant, Jr., and James C. Bridger, as well as Folk, Meccon, Chancellor, Dancy, Aggregates, and Lehman-Roberts, were guilty of negligence in that:

A) They performed the downstream borrow operations alleged herein without exercising reasonable care to ascertain that Nonconnah Creek bed was stabilized in a manner which would have prevented

628

the type of bed erosion and scouring which caused the Bridge failures alleged herein; and

B) After learning that the erosion of Nonconnah Creek bed under the Perkins Bridge was caused or contributed to by the downstream borrow operations and had actually weakened the Bridge's foundations to the point of causing actual structural failures, they continued the downstream borrow operations without any reasonable attempt to stabilize the creek bed to prevent further erosion.

60. Pollard Consultants, William S. Pollard, Jr., Individually, Mall, Perkins, Hahn, Stanley H. Trezevant, Jr., and James C. Bridger, as well as Folk, Meccon, Chancellor, Dancy, Aggregates, and Lehman-Roberts were guilty of gross negligence, amounting to willful, wanton misconduct which directly and proximately caused the property damage, pain and suffering and wrongful death of William L. Austin, Jr., complained of herein in that:

A) They knew or should have known the borrow operations was [sic] endangering the Perkins Bridge but continued the removal of materials; and

B) They, knowing of the erosive changes caused by the borrow operations, did not take preventative and/or corrective measures to safeguard the Bridge, thereby knowingly endangering the public and causing the death of William L. Austin, Jr.; and

C) They, knowing of the dangers caused by the borrow operations continued to advise the State, County, and City that the dredging did not endanger the Bridge.

\* \* \* \* \* \*

These defendants, in response to the allegations against them, generally denied negligence on their part, denied that the borrow operations on the downstream side of the bridge caused the collapse of the bridge, and averred that the cause of the collapse was an act of God solely or an act of God in conjunction with an unusual amount of debris allowed by other parties

to accumulate against the pilings on the upstream side of the bridge. After many months of pretrial discovery, the case was tried before a jury for approximately six weeks resulting in the verdict for the defendants and this appeal.

Plaintiffs have presented for review eleven issues, which we will now consider.

1. The trial court erred in excluding redirect testimony of plaintiff's expert witnesses on points not covered in plaintiffs' answers to interrogatories, where such testimony was offered solely in direct response to specific questions put to the witness on defendants' cross-examination.

Plaintiffs are quite explicit in their brief as to the alleged error: "Specifically, the plaintiffs were not allowed to conduct redirect examination of their experts with respect to subjects which the defendants covered on cross-examination."

Notwithstanding the specificity used by plaintiffs to point out the error as being confined to the court's action concerning redirect examination, we note that the court's action excluding the testimony of the expert witness Guy is not reflected in redirect examination, but during the direct examination by plaintiffs' counsel of their expert witness Guy. The exclusion of the testimony was pursuant to defendants' objection that the information sought was not contained within Guy's answers to interrogatories propounded by defendants.

The parties failed to assist the court in locating in the record the alleged cross-examination which plaintiffs contend opens the door for redirect examination by them. Such assistance would have helped the court eliminate unnecessary review of part of this voluminous record.

■ Where excluded testimony is not preserved in the record, the appellate court cannot consider an issue relating to the exclusion of same. *See Canning v. Canning,* 59 Tenn.App. 678, 443 S.W.2d 502 (1968); *Yellow Bus Line v. Brenner,* 31 Tenn.App. 209, 213 S.W.2d 626 (1948).

 One of the legitimate purposes of redirect examination is to clear up confusion of the witness, and redirect examination rests largely in the discretion of the trial judge. *Yellow Bus Line v. Brenner, supra.*

The initial brief filed by plaintiff was not clear concerning an offer of proof of the evidence excluded and at oral argument this Court requested plaintiffs to file a supplemental brief setting forth the offers of proof which form the premise for the alleged error of the trial court. We have now received the supplemental brief and will consider only the specific areas wherein offers of proof are delineated by plaintiffs pursuant to our request for an additional brief.

Initially plaintiffs complain about testimony which they sought from their expert witness Guy. In the original brief filed by plaintiffs, plaintiffs state absolutely that the alleged error of the court occurred in plaintiffs' redirect examination of this witness. The brief quotes from the record:

Q. [Mr. Smith]:

To what extent would measurements taken three days after the collapse of the bridge have any value at all in indicating the condition of the stream bed at the time of the collapse or prior to the collapse?

\* \* \* \* \* \*

MR. GAERIG: If Your Honor please, this is outside the interrogatory, and I object.

THE COURT: Now, if that's the basis of your objection, I'll sustain it.

Although plaintiffs contend that an offer of proof of the excluded testimony was made, we can find none in the record. What the plaintiffs have submitted to this court as an offer of proof is an offer of proof concerning a question asked by plaintiffs' counsel on direct examination of this witness which is as follows:

Q. [Mr. Smith]

All right, sir, that's fine.

Would you tell us, please, what effect, in your opinion, did the collapse of the road-

way have into the stream in the position you have described, have on the character of the stream underneath the bridge?

 An offer of proof was made when the court sustained an objection to the question, but we cannot consider this offer of proof in response to this different question made on direct examination when no issue has been presented concerning same.

The next alleged error of the court in exclusion of testimony at this stage of the trial concerns witness Kellogg when the plaintiffs complain that the court sustained the objection of defendants to the following question propounded by plaintiffs' counsel on redirect examination of this witness:

Could you tell me, please, whether or not any measurements taken on March 19, 1980, accurately reflect the status of the creek bed prior to the collapse of this bridge?

We find no offer of proof in the record, and plaintiffs have failed to point out any offer of proof to supply this testimony, and, therefore, we cannot consider it. *See Canning v. Canning, supra.*

Plaintiffs, in their original brief, complain about the court sustaining objections to redirect questions of the witness Dunlap. Plaintiffs' counsel do not state in their brief the question to which the objection was made, but in the supplemental post-argument brief set out the offer of proof made when the objection was sustained. The offer of proof is as follows:

MR. ARDIS: I want to make an offer of proof, and I can make it right here.

THE COURT: You want to excuse the jury?

MR. ARDIS: I can make it right here.

THE COURT: Go ahead.

MR. ARDIS: Judge, this witness is prepared to testify about these 1979 cross-sections as follows:

That those are not accurate reflections of the true profile of Nonconnah Creek taken downstream from the Perkins Road bridge because they are not taken in accordance with any regular grid or engineering principles.

Further, he will testify that there was no way to know the elevation, that is, the depth of the holes, between the different points as shown on that cross-section, which are at irregular intervals;

Third, he will testify that those elevations of 234 and 235 and 36 are now shown on there; and the elevations of January 4, 1980, would not be the true elevations, before the two huge rains, November 21 and 22, and I remember December 13;

That, in fact, it is a large shifting around of the soil, degradation at the Perkins Road bridge, and filling of the excavation hole downstream, and he will further testify that those cross-sections started in the vicinity of 320 feet from the bridge, and his observations of the aerial photographs demonstrated in this case, with a 400-foot line as marked by Mr. Pollard, shows that that equipment was working within 200 feet at a depth that is undetermined at this point in time because it's not reflected on the cross-sections in either which way or form;

Further, he will testify that the degrading of the stream bed in the vicinity of Perkins and the effect on the piles between October 1 and the November 7 and November 6 date, when they were discovered, was enhanced and directly attributed to by that excavation within 400 feet from the bridge, as well as the downstream excavation.

He will also testify that there were holes shown in that cross-section that range in the vicinity of 25 to 35 and I think to 40 feet deep, in that stream bed;

That the engineer or the contractor cut outside the plans, that the engineer cut open sanitary sewer lines where he was told not to cut, and in general raised havoc up and down the stream;

He will further testify that there were holes cut in the south bank to undetermined length or depth because of the refilling process; because of the unknown depth during the operation and the measurement was not made to January 4, which is after the point in time.

In general, your Honor, his testimony would be that these cross-sections can't be relied upon, and they don't demonstrate in any which way or form the elevation of the downstream excavation in relation to the Perkins Road bridge at any time during the time the work was going on;

And that there are large holes all over that stream, and last but not least, he will testify that these cross-sections do not demonstrate at all the work that Mr. Chancellor has testified about that was done on the property of Van Court, which is to the west of the—that there are no cross-sections for that work, and that there are no plans for any of this work with the exception of these cross-sections, and they only show the highest level of elevation downstream from the bridge, and not the levels of elevation between these high points and the profession of the sandbar downstream.

Generally speaking, without all the detail, that's my offer of proof from this particular witness.

THE COURT: All right, sir.

The question for which this offer of proof was made is:

Q. All right, sir. Let me hand you these cross-sections, which are marked as Exhibit # 124, and ask you if you will examine those cross-sections, and if you would tell us what the original design depth for mechanical removal is as shown on these cross-sections?

It is obvious from just a reading of the offer of proof that it is not responsive to the question asked, and, in fact, there appears to be no offer of proof of testimony responsive to the question. We are unable to consider any alleged error in the exclusion of testimony responses to the questions objected to.

■ We have reviewed the testimony of the involved witnesses, and, although the court might have been somewhat restrictive in sustaining objections to redirect examination, it does appear that the evidence sought to be introduced by plaintiffs was

actually introduced through the testimony of these very same witnesses at different times during the trial. We cannot say that the trial judge in these instances abused his discretion, and, from what we can ascertain from the record concerning the actual proof excluded, the exclusion thereof is at most harmless error. *See* T.R.A.P. 36(b). Accordingly, we find plaintiffs' assertions as to Issue No. 1 without merit.

2. The trial court erred in admitting the testimony of defendants' experts which went beyond the scope of their interrogatory answers, and in allowing defendants to circumvent a specific order of the Court prohibiting such questions by the "sharing" of an expert among several defendants having an identify [sic] of interests.

Plaintiffs assert the trial court committed error in allowing counsel for co-defendants to cross-examine expert witnesses offered by other co-defendants concerning matters which were beyond the scope of the answers to interrogatories propounded by plaintiffs to defendants in violation of a previous order of the court dated January 19, 1983, and which specifically provided in part:

> No defendant will be allowed to present, through the expert, any proof that has not been disclosed in the interrogatory responses.

■ Initially the plaintiffs complained that this situation was a "sharing" type arrangement of a witness in order to circumvent the ruling of the court, and that, in fact, at least one meeting had been held at which all defendants' counsel participated in a question and answer session with one of the expert witnesses prior to his testimony. The record reflects that the trial court queried defense counsel concerning this allegation of plaintiffs' counsel and was assured by the defendants' counsel that in no way was any attempt made by them to willfully circumvent the court's order, nor to plan, design or agree to participate in any such scheme. The trial court, after hearing such explanations, accepted these explanations as given, and this

court does likewise. The trial court insisted that in the absence of any such arrangement, he was not going to limit cross-examination which was otherwise proper. The determination of the propriety of questions on cross-examination is largely in the discretion of the trial court subject to correction for plain error or evident abuse of discretion. *Davis v. Wicker*, 206 Tenn. 403, 333 S.W.2d 921 (1960); *Wagner v. Niven*, 46 Tenn.App. 581, 332 S.W.2d 511 (1959).

■ Plaintiffs cite five places in the record which they contend contain evidence elicited improperly by co-defendants on cross-examination. We have examined the testimony complained of, and in one instance the proof objected to was not placed before the jury, but was an offer of proof by a defendant. In the other instances the proof objected to was either not beyond the scope of the interrogatory answers referred to by plaintiff, or had previously been introduced into evidence without objection. Accordingly, we cannot find that the trial court abused its discretion in allowing co-defendants to cross-examine the expert witnesses of a co-defendant in the manner permitted.

Also, we note that plaintiffs' counsel were entirely correct in representing this case as, "a classic battle of the experts," and from our review of the record the opinions of these experts relating to the cause of the bridge's collapse was elicited from each of them on more than one occasion and in more than one manner. The testimony complained of by plaintiffs in this issue, even if erroneously admitted by the trial court, under the circumstances of this case, is, in our opinion, harmless. *See* T.R.A.P. 36(b).

Accordingly, plaintiffs' assertion on Issue No. 2 is without merit.

3. Did the trial court err in allowing a party to testify as an expert witness on causation, where that party had not been identified as an expert witness in defendants' answers to interrogatories, and where a pretrial Order of the Court expressly prohibited defendants from

presenting expert witnesses not so identified?

Plaintiffs contend that since Pollard was not listed as an expert witness in the answers to interrogatories, he should be precluded from testifying as an expert witness concerning causation. Plaintiffs assert that not only should this defendant be precluded from offering such testimony under the general rules of discovery, the court's order of January 19, 1983, previously discussed, absolutely prohibits such testimony.

Defendants assert that Pollard is not an expert witness within the meaning of Tenn. R.Civ.P. 26.02 as established by *Alessio v. Crook*, 633 S.W.2d 770 (Tenn.App.1982). In *Alessio*, the defendant doctor was sued for medical malpractice. The defendant supplemented his answers to interrogatories as required by Tenn.R.Civ.P. 26.05 by listing an additional expert and giving a summary of his testimony. The expert listed was a physician who had performed surgery on plaintiff subsequent to the alleged malpractice. At the trial, plaintiffs insisted that the testimony of this elicited expert exceeded the summary of the testimony reported by the defendant in his supplement to the interrogatory answers. Considering this question, the Middle Section of this court determined that the testifying doctor was not an expert witness within the meaning of the discovery rules, Tennessee Rules of Civil Procedure. The court pointed out that Tenn.R.Civ.P. 26 is, in general, identical to Rule 26 of the Federal Rules of Civil Procedure, and as provided in the Notes of the Advisory Committee on the Federal Rules in referring to the identity of expert witnesses:

> It should be noted that the subdivision does not address itself to the expert whose information was not acquired in preparation for trial but rather because he was an *actor* or viewer with respect to transactions or occurrences that are part of the subject matter of the lawsuit. Such an expert should be treated as an ordinary witness. (Emphasis supplied).

*Id.* at 779.

The court then proceeded to hold:

> ■ An expert whose information was not acquired in preparation for trial but rather because he was an *actor* or viewer in regard to the occurrence should be treated as an ordinary witness and not as an expert as contemplated by Rule 26, TRCP (Emphasis supplied).

*Id.* at 779.

The federal courts have held that a defendant doctor in a malpractice case is not an "expert witness" for purposes of discovery, but rather is subject to the broad range of discovery accorded against any party defendant. *See Rodriguez v. Hrinda*, 16 F.R.Serv.2d 592 (W.D.Pa.1972); *Virginia Electric and Power Co. v. Sun Ship Building & D.D. Co.*, 68 F.R.D. 397 (E.D. Va.1975).

We can find no convincing reason to limit the testimony of a defendant, whether he be an ordinary lay person or a professional person, to anything less than the materiality, competency and relevancy of his testimony.

■ The rules concerning discovery were promulgated to allow the parties to ascertain relevant facts pertaining to their case, thus narrowing the issues in order to reach a decision on the merits without "trial by ambush." Plaintiffs had the opportunity and did avail themselves of the opportunity to take the deposition of Pollard, and we do not feel that plaintiffs are justified in claiming surprise at Pollard's testimony.

Plaintiffs' assertions on Issue No. 3 are without merit.

4. Did the trial court err in permitting expert witnesses to give opinions based on an assumption that there was as much as a 50% debris blockage on the bridge piles prior to the collapse of the bridge, when all of the eyewitnesses testified that there was little or no debris accumulation before the collapse?

Plaintiffs contend that the expert opinions elicited concerning causation were in response to a hypothesis that contained evidence that was not in the record or was improperly admitted into the record. The

questions objected to by plaintiffs included, as part of the hypothesis, the assumption that the stream flow of the creek at the time of the collapse was blocked approximately 50% by accumulated debris on the pilings of the bridge. This figure was obtained from testimony of the defendant, Pollard, wherein he was allowed by the court over the objection of plaintiffs to give his opinion that the blockage of the stream flow was approximately 50% at the time of the collapse. His opinion was based on photographs taken subsequent to the collapse, his basic knowledge and information about the characteristics of the creek, and his training, education and experience as an engineer. Thus, for us to reach the issue presented, we actually must determine whether the testimony of Pollard relating to the 50% blockage was properly admitted.

The record reflects that various allegations were made by both parties in the pleadings concerning debris and the effect of debris on the bridge structure. Witnesses testified as to their observation of the nature and extent of the debris at various times. Although the collapse of the bridge caused the concrete pavement slabs to fall into the creek on top of the debris directly below the collapse, witnesses testified that shortly after the collapse they observed a great amount of debris accumulated against pilings that were still standing in the creek. Also the record reflects that the creek created a great deal of debris accumulation problems at other bridge locations in its continued course. Although the defendants did not offer any eyewitness proof of the amount of debris present at the time of collapse, adequate evidence concerning varying amounts of debris in the water and adjacent to the bridge prior to its collapse appears in the record. Defendants thereupon attempted "to re-create" or "reconstruct" the situation by virtue of expert testimony. An objection was made by plaintiffs' counsel to the proposed testimony, and the court undertook to examine the witness in the absence of the jury to ascertain to his satisfaction: that the witness had a proper foundation in the realm of his expertise to

give the testimony requested and that the matter was such that it could be proven by a re-creation from the available evidence subsequent to the collapse. This situation does present a rather close question, but the trial judge has broad discretion in dealing with the qualifications of expert witnesses and the admission of their testimony. *See Shelby County v. Barden*, 527 S.W.2d 124, 130 (Tenn.1975). From our review of the record, we cannot say that the trial court abused its discretion by allowing the witness to testify in the manner indicated, and, thus, the evidence creating the hypothesis objected to by plaintiffs was properly admitted into evidence. Under the circumstances, we find plaintiffs assertions as to this issue without merit.

5. The trial court erred in refusing to allow plaintiffs' attorneys to question defendant Trezevant concerning the amount he paid to defendant Pollard for engineering services, where such evidence was offered to show motive.

Plaintiffs contend that Pollard knew about the detrimental effect the downstream borrow operations had had upon the Perkins Street bridge, but he withheld this information from the city authorities. Plaintiffs assert that the evidence as to the amount of money paid by Trezevant to Pollard was relevant to show Pollard's motive in withholding information from the city concerning the operations. Since Pollard, even though a party, was a key witness for the defendants, the plaintiffs assert that the court's error in the exclusion of this testimony was certainly not harmless.

Defendants contend that the information sought by the question was irrelevant, prejudicial and nonprobative. Defendants contend that if such evidence were admitted, they would be forced to then come forward with proof concerning the nature of the services rendered by Pollard to Trezevant for which he was paid and the reasonableness of the amounts paid by Trezevant to Pollard. Defendants never contended that Pollard was not hired by Trezevant to per-

form the duties assigned in connection with these operations; and it was quite evident that Pollard practiced his profession for his livelihood. In addition, we note that Trezevant acknowledged he was a valuable client of Pollard.

■ The admissibility or exclusion of evidence rests within the sound discretion of the trial court which should be reversed only for abuse of that discretion. *Pack v. Boyer*, 59 Tenn.App. 141, 149–150, 438 S.W.2d 754, 758 (1968).

In *McCormack v. Riley*, 576 S.W.2d 358 (Tenn.App.1978), Judge Drowota, then on the Court of Appeals, said:

Having decided the excluded evidence has some probative value we now must address the conceptually distinct question whether the excluded evidence has sufficient probative value to warrant its admission despite the cost attending such admission. It is to this latter consideration that we understand the trial judge to have referred when he excluded the evidence because of remoteness in time. Not all logically relevant evidence is admissible. Thus evidence which would advance the inquiry but would also inflame or unduly distract the jury or require an undeserved expenditure of judicial time or unfairly surprise the opponent may not be admissible. *See McCormick on Evidence* § 185 (2d Ed.1972). The probative weight of evidence must be balanced against these attendant costs in determining whether that evidence should be admitted.

*Id.* at 360.

■ Although another court might have ruled differently on the admissibility of evidence excluded, we cannot say that the trial court abused its discretion in the exclusion of the evidence. The circumstantial evidence sought by plaintiff of an illicit motive could have been inferred by the jury from the evidence properly admitted to which we have alluded. Consequently, we do not find an abuse of discretion by the trial court in excluding this evidence of doubtful probative value.

6. The trial court erred in failing to instruct the jury that the defendants have the burden of proof as to the affirmative defenses of intervening superseding cause, and Act of God.

In this issue, plaintiffs also assert that the trial court's charge was erroneous concerning the burden of proof placed upon the plaintiffs. The part of the charge complained of is as follows:

Whereas, in this case, the defendants deny their negligence, deny each and every material allegation of the complaint, then the law steps in and places upon the plaintiff, or the person suing, the burden of supporting and making out his case upon every material issue and controversy by the greater weight or preponderance of the evidence. In other words, the plaintiffs must show by the greater weight or preponderance of the evidence the nature and extent of the injuries and damages, and that the injuries and damages were proximately due to one or more of the acts of negligence alleged against the defendants.

The term, preponderance of the evidence, means that amount of factual information presented to you in this trial which is sufficient to cause you to believe that the allegation is probably true. In order to preponderate, the evidence must have the greater convincing effect in the formation of your belief.

If the evidence on a particular issue appears to be equally balanced, the party having the burden of proving it, proving that issue, must fail. You must consider all of the evidence pertaining to every issue regardless of who presented it.

Plaintiffs further assert that on the defenses presented by the defendants, the trial court did not instruct the jury as to the burden of proof in any manner.

Defendants contend, in response to plaintiffs' allegation of error, that a fair reading of the above-quoted part of the charge correctly states the law, and that any failure of the court to charge the burden of proof on the specific affirmative defenses

was waived by plaintiffs' failure to submit special requests for instructions.

 While in some respects, the trial court's instructions to the jury could have been more explanatory, and in the case of the above excerpts could have been more explicit, a fair reading of the charge indicates that the court is stating to the jury that when the defendants deny the allegations made against them, the burden of proof on these issues is cast upon the plaintiffs. This portion of the charge is a correct statement of the law, and, although the trial court used the phrase "every material issue in controversy," we think in the context given, the instruction correctly states the law.

As to the specific error asserted concerning a lack of instruction by the court on the burden of proof regarding the special defenses raised by the defendants, we note that plaintiffs failed to submit special requests for instructions to inform the court of these alleged omissions. In *Rule v. Empire Gas Corporation*, 563 S.W.2d 551 (Tenn.1978), Justice Brock left little room for doubt as to the effect of allegedly incomplete instructions of the trial court to the jury in the absence of the special request therefore:

> We hold that Rule 51.02 of the Tennessee Rules of Civil Procedure has not abolished or altered the rule announced in the *Provence* and *Holmes* cases, *supra*, that in order to predicate error upon an alleged omission in the instructions given to the jury by the trial judge he must have pointed out such omission to the trial judge at trial by an appropriate request for instruction.

*Id.* at 554.

 In the case at bar, plaintiffs have not asserted that the trial court denied their special request for instruction as to burden of proof on the affirmative defenses relied upon by defendants. We must, therefore, assume that no such special request for instruction was made, and, consequently, plaintiffs cannot now raise this alleged error. We find plaintiffs' assertions on Issue No. 6 without merit.

7. The trial court erred in refusing to instruct the jury on the law of strict liability, where the defendants were engaged in land excavation activities.

 In order to predicate error upon alleged omission in the instructions given to the jury by the trial judge, the complaining party must have pointed out such omission to the trial judge at trial by an appropriate request for instruction. *See Rule v. Empire Gas Corporation*, 563 S.W.2d 551, 554 (Tenn.1978). Plaintiffs specify six separate special requests for instructions pertaining to the issue raised and we will confine our consideration of the issue presented to the refusal of these special requests.

1. An owner of property has an absolute duty not to use his property in such a manner as to injure other property or persons.

A landowner, who by making an excavation takes away the lateral support of neighboring grounds so as to cause it to fall, slide or break away, is liable for the injury regardless of how carefully he excavated.

 The part of the special request relating to a landowner's duty was included in the general charge, and the rest of the charge not supported by the record was properly excluded.

2. Dredging is an inherently dangerous or hazardous activity which cannot be delegated to an independent contractor.

This special request does not correctly state the law applicable to the facts contained in the record. Also, plaintiffs admit in their brief that dredging is not an inherently dangerous or hazardous activity per se.

3. Moreover, an owner of land abutting a highway has a duty to exercise reasonable care not to jeopardize or endanger the safety of persons using the highway. Such a duty cannot be delegated to a contractor.

This rule is specifically applicable to the owner of land adjacent to a public thoroughfare:

A possessor of land who creates or permits to remain thereon an excavation or other artificial conditions so near an existing highway that he realizes or should realize that it involves an unreasonable risk to others accidentally brought into contact with such condition while traveling with reasonable care upon the highway, is subject to liability for physical harm thereby caused to persons who (a) are traveling on the highway, or (b) foreseeably deviate from it in the ordinary course of travel.

■ The general charge adequately covered the duty of the landowner situated in the same position as defendants in this case. This special request does not in all particulars relate to the factual situation presented in this case, and therefore, it was properly excluded.

4. One who employs an independent contractor to do work which the employer knows or has reason to know to involve an abnormally dangerous activity, is subject to liability to the same extent as a contractor for physical harm to others caused by the activity.

The instruction requested herein was adequately covered by the general jury charge and, therefore, the trial court committed no error in excluding this charge.

5. The person who carries on an ultra-hazardous activity is liable, regardless of the care he uses, for injuries to persons or property of which such activity was the proximate cause.

The duty of responsibility cannot be escaped by contract with an independent contractor as it is a non-delagable [sic] duty.

■ That part of this special request concerning duties applicable from the facts in evidence was included in the general charge. That portion of the request relating to ultra-hazardous activity was properly excluded by the court based upon the record.

6. Dredging is an ultra-hazardous activity.

We have heretofore stated that the trial judge properly excluded this type of special request in the jury charge. We find no merit in plaintiffs' assertion to Issue No. 7.

8. The trial court erred in instructing the jury on the Act of God defense, where there was no evidence that the bridge collapse was caused by the direct, immediate and exclusive operation of the forces of nature without human intervention nor any evidence of a natural phenomenon unforseeable in human experience.

Plaintiffs contend that no evidence exists in the record to support the Act of God charge given to the jury. However, plaintiffs do not complain that the charge is incorrect.

■ The defendants relied upon this defense in their respective answers. The record indicates evidence that supports this defense: unusual and extraordinary rapid rise in the level of the stream, a period of intense rainfall, and a great accumulation of debris at the bridge site. In view of the whole body of proof, we find that sufficient evidence exists to support this charge to the jury. Accordingly, plaintiffs' assertion on this issue is without merit.

9. The trial court erred in instructing the jury on the responsibility of governmental authorities for closing the bridge where the governmental authorities were not parties and where their negligence was not at issue.

The part of the instruction complained of is as follows:

Under Tennessee law, the authority and responsibility for closing a bridge which was known or should have been known to be unsafe rests solely with the governmental authority. The defendants before you had neither the authority nor responsibility to close the Perkins Street bridge at any time.

■ Plaintiffs contend that this instruction is outside the facts and evidence at trial. We disagree. Defendants asserted as an affirmative defense the negligence of others, an independent intervening act.

The city was mentioned throughout the trial, and evidence was introduced to show the city's involvement in repair of the bridge on previous occasions and the concern of the city for the bridge's stability on the night of this tragic occurrence. Under the defenses relied upon by defendant, and the facts introduced in support thereof, this part of the charge was proper, and therefore we find plaintiffs' assertions without merit.

10. The trial court erred in dismissing the State defendants and the Chickasaw Basin Authority on the basis of sovereign immunity.

As previously noted, plaintiffs sued the State of Tennessee, several departments thereof and some individual officers and employees, which the plaintiffs, in their briefs have chosen to treat as one defendant, the State, which we will also do. In addition, plaintiffs sued Chickasaw Basin Authority, a public body corporate created by Chapter 409, Public Acts of 1973, codified as T.C.A. § 64–1–201 *et seq.*

Article I, Section 17, Constitution of the State of Tennessee, provides in part:

Suits may be brought against the State in such a manner and in such courts as the Legislature may by law direct.

T.C.A. § 20–13–102(a) provides:

*Actions against state prohibited.*—(a) No court in the state shall have any power, jurisdiction, or authority to entertain any suit against the state, or against any officer of the state acting by authority of the state, with a view to reach the state, its treasury, funds, or property, and all such suits shall be dismissed as to the state or such officers, on motion, plea, or demurrer of the law officer of the state, or counsel employed for the state.

\* \* \* \* \* \*

As to the State, plaintiffs in their brief do not contend that sovereign immunity as established by the above-quoted part of the constitution and above-quoted statute is not the established law in this state. However, plaintiffs urge this court to change this law by virtue of judicial decree. We decline this invitation. As pointed out by Judge Todd in *Jones v. L & N Railroad Co.*, 617 S.W.2d 164 (Tenn.App. 1981):

The rule of sovereign immunity in Tennessee is both constitutional and statutory. It is not within the power of the courts to amend it.

*Id.* at 170.

As to defendant, Chickasaw Basin Authority, plaintiffs assert a different proposition. As pointed out, Chickasaw Basin Authority is a public body corporate created by the legislature with its own board of directors to guide it. T.C.A. § 64–1–204 (1982) provides in part:

*Powers and duties—Tax exempt status*—The powers, duties and functions of the authority shall be as follows: (1) to have perpetual succession in corporate name;

(2) to sue and be sued in corporate name;

\* \* \* \* \* \*

Plaintiffs assert that the provision in the statute allowing the authority to sue and be sued in corporate name is a waiver of sovereign immunity. On the other hand, Chickasaw Basin Authority contends that this section is not a waiver of sovereign immunity, because the courts to which the authority is subject are not designated.

The legislature established the Chickasaw Basin Authority as a corporate body, and it was designated as an entity for purposes of General State Obligation Financing, T.C.A. § 64–1–205 (1982). The general obligations of the State involve its treasury, funds or property as referred to in T.C.A. § 20–13–102 (1980). The purposes for which the authority was created, as stated by the legislative intent in T.C.A. § 64–1–202 (1982), indicate a broad governmental function. In *Applewhite v. Memphis State University*, 495 S.W.2d 190 (Tenn.1973), our Supreme Court in considering the question of sovereign immunity as it applied to a nonprofit corporation wholly owned by a state institution stated:

It is necessary to carefully consider the nature of the defendant entity asserting

sovereign immunity, as well as the cause of action against which the doctrine is asserted to determine whether the sovereign immunity doctrine applies.

*Id.* at 196.

The court further said:

The fact that a State-controlled entity is incorporated does not, however, necessarily impose liability upon it. In *University of Tennessee v. Peoples Bank,* 157 Tenn. 87, 6 S.W.2d 328 (1928), this court said that cases holding state corporations liable were

founded, not upon the fact that the State had created a corporation as an agency for the possession and management of a portion of its property, but upon the nature and character of the corporation organized, as evidenced by its purpose and the kind and character of business transacted by it. 157 Tenn. at 93, 6 S.W.2d at 330.

*Id.* at 197.

It is noted that the legislature was quite explicit in stating its intent that the authority "shall be operated as a state agency subject to all fiscal requirements and procedures which apply to other state departments and agencies, and subject to joint local funding as stipulated in this part." T.C.A. § 64–1–205(6) (1982).

■ In *Reynolds v. Chickasaw Basin Authority,* filed April 30, 1980, application for permission to appeal denied by the Tennessee Supreme Court September 2, 1980, the Court of Appeals, Western Section, in considering an action for breach of contract against Chickasaw Basin Authority, stated that the plaintiffs' claim was directed at the state's treasury, and, therefore, not authorized by T.C.A. § 20–1702 (now T.C.A. § 20–13–102). The court noted that plaintiffs' recourse was properly with the Board of Claims pursuant to T.C.A. § 9–8–101 *et seq.* (1980). This likewise holds true for the case at bar.

11. The trial court erred in refusing to submit the issues of gross negligence and punitive damages to the jury, where the proof showed the defendants' conscious indifference to the consequences of their excavation activities.

■ We agree with the statement in plaintiffs' brief, "Normally the appellate court would not reach the issue of punitive damages where a defendant's verdict has been rendered."

We see no reason to depart from the sound statement of policy made by Judge Anderson in *General Outdoor Advertising v. Coley,* 23 Tenn.App. 292, 131 S.W.2d 305 (1938):

While there are exceptional cases principally arising out of the fact that we are an intermediate appellate tribunal, this court as a general rule endeavors to confine its decision to the question or questions that are determinative of the controversy and having decided these, brings its opinion to a conclusion upon the theory that the entire controversy having been decided, a decision upon questions, being unnecessary, would be of doubtful value from any viewpoint. Experience has proven beyond a doubt that, generally speaking, the wisest course is to pass on what is necessary to dispose of a controversy and then stop.

*Id.* at 309.

Consequently, we do not feel we should consider this issue.

Having disposed of all of the issues raised on appeal, we affirm the judgment of the trial court and assess costs against the appellants.

TOMLIN, J., and WEST, Special Judge, concur.