CITY OF LAVERGNE,
Plaintiff–Appellant,

v.

SOUTHERN SILVER, INC.,
Defendant–Appellee.

Court of Appeals of Tennessee,
Western Section, at Nashville.

Oct. 1, 1993.

Application for Permission to Appeal
Denied by Supreme Court
Jan. 31, 1994.

Karen S. Neal, Lisa E. Peerman, Richard M. Riebeling, Stokes & Bartholomew, Nashville, Don R. Ash, John D. Drake, Bolin & Ash, Murfreesboro, for plaintiff-appellant.

Frank M. Fly, Bullock, Fly & McFarlin, Murfreesboro, for defendant-appellee.

CRAWFORD, Judge.

In July, 1989, the plaintiff/appellant, City of Lavergne, (hereinafter "City") sought injunctive relief against the defendant/appellee, Southern Silver Inc. (hereinafter "Southern Silver"), a company that retrieves the silver in old film and x-rays by melting down the film, after the City had received many complaints from residents about smoke, odor and illness that resulted from Southern Silver's operations. In its complaint, the City alleged that Southern Silver was operating an incinerator in violation of a city zoning ordinance. The Chancery Court granted a temporary injunction that limited Southern Silver's operation to certain days each week. The court entered the injunction on September 11, 1989, but by October of the next year, Southern Silver had resumed operating as it had before entry of the injunction. The City of Lavergne filed a petition for contempt, which was heard on January 2, 1991, and on January 3, 1991, the Chancellor filed an opinion finding that Southern Silver was not in contempt and that the temporary injunction should be dissolved due to lack of proof that the emissions from Southern Silver's plant constituted a nuisance. The court further found that the City's action in obtaining the temporary injunction was not malicious, but that the City's action was an effort to protect its citizens. An order denying the petition for contempt and for injunctive relief was entered on May 13, 1991.

After the case was set for trial, Southern Silver filed a motion for leave to file a counter-claim, which was granted. The counter-complaint sought compensatory and punitive damages against the City, alleging that the City had wrongfully filed its complaint for injunction, had brought false and untrue charges, and had wrongfully sought and obtained a temporary injunction, causing Southern Silver a loss of business. The City's answer to the counter-complaint denied Southern Silver's allegations but asserted no affirmative defenses.

A non-jury trial was held July 30 and 31, 1992. During opening statements, counsel for the City announced that it relied on governmental immunity as a defense to the counter-claim. Southern Silver argued that the defense was waived because the City failed to plead governmental immunity in its answer to the counter-claim. City did not seek to amend to include this defense.

The case was taken under advisement and on September 28, 1992, the Trial Court filed its opinion containing findings of fact and conclusions of law. The Court found that:

The proof presented failed to establish any dangerous emissions from Silver's processes that would harm or irritate the neighbors living in Lavergne. While some pictures were admitted showing smoke escaping from the Defendant's smoke stack, there was no proof that the ingredients or particles of smoke were in any manner harmful. Also four layman (i.e. neighbors) testified with respect to the smoke, but the collective results of their testimony failed to establish the source of the odors which they alleged caused them some discomfort.

The court is forced to rule that Plaintiff's proof is inadequate to maintain a violation of the City's ordinances or code, nor is it adequate to establish a nuisance.

The Court also found that Southern Silver "has suffered financial loss and damages due

to the wrongful obtaining of the temporary injunction." The opinion states:

> The Cross-complaint alleges that City's actions as to Silver were intentional, deliberate, and calculated to bring about the financial collapse of Silver through harassment, intimidation, and abuse of the judicial process. Such allegations were very simply "denied".
>
> The only proof presented which tended to substantiate the above allegations was the evidence that former Mayor Moore told the City inspector to "make up violations". To rely upon such limited proof as a basis for punitive damages is a greater step than this Court is willing to take. However, the mere fact that the City caused or permitted the filing of the application for an injunction is a concern to the Court. Presumably counsel for the City was instructed or authorized to file this cause; if so, the minutes of the governing body should so show, but none were presented. The Court holds that punitive damages will not be allowed.

The Trial Court further found that Southern Silver was entitled to compensatory damages in the amount of $100,000.00. The Court, in holding that the City had waived the defense of governmental immunity, said:

> The City did not plead or suggest sovereign immunity until the trial on July 30, 1992 which is more than four years after it initiated this lawsuit and more than one year after a counter-complaint was filed. Thus this Court holds that municipal immunity is waived and is not admissible as a defense in this proceeding and will not abate damages.

Final judgment was entered incorporating the Court's opinion, and the City has appealed, presenting one issue for review, which we quote from the brief:

> Whether the Trial Court erred in awarding damages against the City of Lavergne, Tennessee, because the City is granted absolute sovereign immunity from the action brought by Counter–Complainant/Appellee under Article 1, Section 17 of the *Tennessee Constitution* and under the Tennessee Governmental Tort Liability Act, *Tenn.Code Ann.* §§ 29–20–101 *et seq.?*

Southern Silver has filed three issues for review, which we quote from the brief:

1. Should governmental immunity be abolished in Tennessee?

2. Does the failure of the City of Lavergne to plead the doctrine of sovereign immunity as an affirmative defense in its answer to defendant's counter-complaint constitute a waiver of its right to raise such a defense at trial?

3. Is the doctrine of sovereign immunity available to the City of Lavergne as a defense to the counter-complaint even if it had been originally pleaded as required?

We will first consider Southern Silver's issues, the first of which concerns the abolishment of the sovereign or governmental immunity doctrine. In *Austin v. City of Memphis*, 684 S.W.2d 624 (Tenn.App.1984), this Court, in considering a similar issue, said:

> [P]laintiffs urge this court to change [the law of governmental immunity] by virtue of judicial decree. We decline this invitation. As pointed out by Judge Todd in *Jones v. L & N Railroad Co.*, 617 S.W.2d 164 (Tenn.App.1981):
>
> > The rule of sovereign immunity in Tennessee is both constitutional and statutory. It is not within the power of the courts to amend it.
>
> *Id.* at 170.

684 S.W.2d at 637.

Southern Silver's remaining two issues and the City's issue can be rephrased into two issues, i.e., whether the defense of sovereign immunity must be specially pleaded as an affirmative defense, and, if not, whether Southern Silver's suit is barred by sovereign immunity. We will consider these issues together.

As we have heretofore noted, the doctrine of sovereign immunity is firmly embedded in our jurisprudence. Its existence is established in Article 1, Section 17 of the Constitution of Tennessee: "Suits may be brought against the State in such manner and in such courts as the Legislature may by law direct." This constitutional provision "carries with it a positive implication that they shall not be

brought otherwise, or at all unless legislative authority therefor be affirmatively given." *Insurance Co. v. Craig,* 106 Tenn. 621, 629, 62 S.W. 155, 157 (1901).

In the performance of its governmental functions, the municipality is an arm or agent of the State and enjoys the same immunity under the constitutional provision. *Scates v. Board of Comm'rs of Union City,* 196 Tenn. 274, 265 S.W.2d 563 (1954). The Tennessee Governmental Tort Liability Act, enacted in 1973, is premised explicitly on the absolute immunity of governmental entities. T.C.A. § 29–20–201 (Supp.1992) provides in pertinent part:

(a) Except as may be otherwise provided in this chapter, all governmental entities shall be immune from suit for any injury which may result from the activities of such governmental entities wherein such governmental entities are engaged in the exercise and discharge of any of their functions, governmental or proprietary.

\* \* \* \* \* \*

(c) When immunity is removed by this chapter any claim for damages must be brought in strict compliance with the terms of this chapter.

After this declaration of absolute immunity, the Act makes provision for various suits against governmental entities "in such manner and in such courts as the Legislature may by law direct." Tenn. Const. Art. 1, § 17.

Southern Silver relies upon the unpublished opinion of the middle section of this court in *Pigg v. City of Waynesboro,* Execution No. 13245, (Tenn.App. Aug. 3, 1979), which held that the failure of the city to plead and rely on governmental immunity in the trial court constituted a waiver of that defense. Although the court considered the defense waived, the opinion indicates that the parties did not present the matter to this court as a jurisdictional issue arising from the construction of the Governmental Tort Liability Act. We must respectfully disagree with the holding in *Pigg* in the face of a jurisdictional challenge as presented in the instant case.

Counsel for the parties have cited no published Tennessee authority dealing with the precise question of whether it is necessary to plead governmental immunity as an affirmative defense, nor has our research revealed such a case. Consequently, we must determine whether the Legislature intended to establish merely a defense of governmental immunity or if the intent was to restrict the jurisdiction of the courts in certain actions. This "[l]egislative intent or purpose is to be ascertained primarily from the natural and ordinary meaning of the language used, when read in the context of the entire statute, and without any forced or subtle construction to limit or extend the import of the language." *City of Caryville v. Campbell County,* 660 S.W.2d 510, 512 (Tenn.App.1983) (citations omitted).

Using this criteria to examine the language of the Act as codified, we hold that the intent of the Legislature in enacting the Governmental Tort Liability Act was to deny jurisdiction to the Courts of this State to entertain a suit against a governmental entity that is immune from suit. T.C.A. § 29–20–201(a) grants immunity to governmental entities for all of their activities. The immunity granted is specifically "from suit," and nothing in the language of the Act indicates that the Legislature contemplated that the immunity granted would be merely a defense to suit that is waivable by the governmental entity. Considering the Act in light of Article 1, Section 17 of the Tennessee Constitution, we conclude from the natural and ordinary language of the Act construed as a whole that the Legislature intended that the sovereign be subject to suit only in those instances where immunity was specifically removed. In the absence of such removal, the court is without jurisdiction to entertain the suit. Therefore, the failure to plead governmental immunity as an affirmative defense does not constitute a waiver of immunity.

The case of *Hill v. Beeler,* 199 Tenn. 325, 286 S.W.2d 868 (1956), further buttresses this construction of the Act. In *Hill,* the Tennessee Supreme Court held that the jurisdiction of the State Board of Claims to entertain claims against the state was limited to those

cases specified in the act that created the Board.

Our interpretation of the Act is not without support, although admittedly there is a split of authority. In 57 Am.Jur.2d, *Municipal, County, School, and State Tort Liability,* § 649–650 (1988) it is stated:

649. Sovereign or governmental tort immunity is a bar to the jurisdiction of courts over tort actions against state or local governmental bodies. Removal of immunity thus constitutes a grant of jurisdiction.... 650. Sovereign or governmental immunity from suit in tort is a jurisdictional bar, regarded in some jurisdictions as not subject to waiver as an affirmative defense, since it goes to the subject matter jurisdiction of the court, the lack of which may be raised at any time, whether at trial or for the first time on appeal. Under this view, sovereign immunity under authority of a state tort claims act is not subject to waiver by the imposition of procedural requirements in litigation or by procedural defaults. Accordingly, the failure to plead the defense in an answer and to raise the issue at trial did not waive it, nor would the defendant's failure to raise the issue of the plaintiff's failure to affirmatively plead a waiver of sovereign immunity waive the defect. Other jurisdictions, however, consider immunity a defense which must be raised to avoid waiver.

The diversity of the language of the various constitutional provisions and governmental tort liability acts renders various decisions in foreign jurisdictions rather unpersuasive. All of these cases have their distinctive characteristics reflecting the particular state court's interpretation of the respective statutes and constitutional provisions.

█ Having reached the conclusion that the City of Lavergne may rely upon the defense of governmental immunity, we now must consider whether governmental immunity bars the action of Southern Silver. Southern Silver's complaint alleges that the City wrongfully filed a complaint against the defendant, wrongfully sought and obtained a temporary injunction, brought false and untrue charges against Southern Silver and harassed Southern Silver with its zoning and code enforcement office. The complaint avers that the actions of the City were intentional, deliberate, calculated and designed to inflict harm upon Southern Silver and constituted an abuse of judicial process.

T.C.A. § 29–20–205(5) (1980) provides:

**Removal of immunity for injury caused by negligent act or omission of employees—Exceptions.**—Immunity from suit of all governmental entities is removed for injury proximately caused by a negligent act or omission of any employee within the scope of his employment except if the injury:

(5) Arises out of the institution or prosecution of any judicial or administrative proceeding, even if malicious or without probable cause;

It is clear from the allegations in the complaint and the evidence introduced at trial that Southern Silver's cause of action falls within the purview of the statute as quoted. Thus, the City of Lavergne is immune from suit.

Southern Silver argues in its brief that its suit is a 42 U.S.C. § 1983 action for damages resulting from violation of the Equal Protection Clause of the United States Constitution. We have examined the pleadings, evidentiary transcript, and the trial court's findings, none of which reflect any indication that Southern Silver's suit is based on a § 1983 violation. Southern Silver did not make this argument in the court below and presents this theory for the first time on appeal. As a general rule, questions or issues not raised in the trial court will not be entertained on appeal. *Lawrence v. Stanford,* 655 S.W.2d 927, 929 (Tenn.1983); *Seay v. County of Shelby,* 672 S.W.2d 404, 409 (Tenn.App.1984); *Sutton v. Bledsoe,* 635 S.W.2d 379, 382 (Tenn.App. 1981).

The judgment of the trial court awarding damages against the City of Lavergne is vacated and the counter-complaint of Southern Silver is dismissed. The costs in the trial court and on appeal are assessed against Southern Silver. The case is remanded to

the trial court for such further proceedings as may be necessary.

TOMLIN and HIGHERS, JJ., concur.