IN THE COURT OF APPEALS OF TENNESSEE
WESTERN SECTION AT JACKSON

_____

WILLIAM J. CHASE, JR., As Administrator
C.T.A. of the Estate of BETTY LOU
STIDHAM, Deceased,

      Plaintiff-Appellee,

Vs.

THE CITY OF MEMPHIS,

      Defendant-Appellant.

FILED

September 5, 1997

Cecil Crowson, Jr.
Appellate Court Clerk

C.A. No. 02A01-211-CV-00327
Shelby Circuit No. 36934 T.D.

_____

FROM THE CIRCUIT COURT OF SHELBY COUNTY
THE HONORABLE JAMES E. SWEARENGEN, JUDGE

John J. Heflin III, Bourland, Heflin,
Alvarez, Holley & Minor, PLC, of Memphis
For Plaintiff-Appellee

Monice Moore Hagler, City Attorney
Robert M. Fargarson, Assistant City Attorney
Martin W. Zummach
For Defendant-Appellant

*AFFIRMED*

Opinion filed:

W. FRANK CRAWFORD,
PRESIDING JUDGE, W.S.

CONCUR:

DAVID R. FARMER, JUDGE

HOLLY KIRBY LILLARD, JUDGE

      This appeal involves a suit for wrongful death based on negligence under the Tennessee

Governmental Tort Liability Act, T.C.A. § 29-20-101 *et seq.* (1980) and for wrongful death

based on the creation of a special relationship and a nuisance. Defendant, the City of Memphis,

appeals from the trial court's judgment in favor of plaintiff, William J. Chase, as Administrator C.T.A. of the Estate of Betty Lou Stidham. The trial court, sitting without a jury, found that plaintiff's damages totaled $1,897,713.03, and that the City's negligence caused 40 percent of those damages. However, because of the application of the Tennessee Governmental Tort Liability Act (hereinafter the Act), the court limited plaintiff's recovery to $130,000.00, and entered a judgment in that amount.

The issues to be decided are whether the trial court erred in finding that the defendant's acts were not immune from liability under the Act; and if not immune, whether the trial court erred in finding that the defendant's negligence was a proximate cause of Betty Lou Stidham's death; whether the trial court erred in finding that the defendant assumed a special duty to Ms. Stidham to undertake acts that would have protected her; and finally, whether claims against municipalities arising out of the creation of a nuisance are encompassed within the Act; and if so, whether the trial court erred in failing to grant plaintiff a recovery based on nuisance. The plaintiff also asks this Court to consider whether the doctrine of sovereign immunity should be discarded by the courts of Tennessee.

I.

Betty Lou Stidham died on June 18, 1990, after being mauled to death by two pit bull dogs owned by her next door neighbor, Edwin Hill. Prior to this incident, Hill had a variety of problems with the dogs. In February of 1988, the dogs attempted to attack Hill's mother, and on October 30, 1988, they succeeded. Both times, city employees, either police, paramedics, or both, were called to the scene to assist. After the October 1988 incident, the police sent a report about the attack to the City of Memphis Animal Shelter. Earl Grouchau, who owned Ms. Stidham's home prior to selling it to her, also had problems with Hill's dogs. Grouchau testified that Hill's dogs caused him to fear for his life. He built a six-foot wooden fence on his side of the property after Hill's dogs began to burrow underneath the chain link fence. Undaunted, the dogs continued to burrow underneath the new fence and enter his yard. After the pit bull dogs chased his son, Grouchau complained to the City of Memphis Police. He complained to the police about the dogs at least two times between 1987 and 1989 and also filed a complaint with the Animal Shelter. He informed Robert Lee, the manager of the Animal Shelter, about his

problems with Hill's dogs.

On January 3, 1990, Hill's dogs attacked Ms. Stidham's small dog, which resulted in Ms. Stidham filing a "vicious animal complaint" with the Animal Shelter. As a result of the complaint, Hill's dogs were impounded for evaluation. While the dogs were in the care of the city, the female dog attempted to attack an Animal Shelter worker, Pamela Topping. During the evaluation period, Animal Shelter employees performed tests on the dogs to evaluate their behavior and found that neither of the dogs exhibited overtly aggressive behavior.

On January 23, 1990, a vicious animal hearing took place at the Animal Shelter. Despite the fact that the Animal Shelter is supposed to keep records of dog attacks received from the police, fire department, and hospitals, it had no record of the prior attacks by Hill's dogs. Robert Lee, who conducted the hearing, did not allow testimony to be elicited from Hill concerning the violent nature of the dogs. Lee decided that the dogs were not "vicious" based on the tests performed during the evaluation period. Lee concluded that the dogs did not show a vicious nature toward humans or other animals and, therefore, the dogs were released to Hill. Instead, Lee determined that the dogs were "dangerous" because they were capable of inflicting serious injury. Lee issued a letter on January 29, 1990, which stated that the dogs were dangerous and ordered that Hill correct any fencing deficiencies around his property and that Hill enroll himself and the dogs in a basic obedience training program within 90 days. According to the letter, Hill's failure to do either would result in a declaration that the dogs were vicious and immediate seizure of the dogs. The letter was sent to both Hill and Ms. Stidham.

Hill's dogs were released to him on January 26, 1990. On two occasions, Animal Shelter employees, including Lee, visited Hill's property to inspect the fencing. Lee ordered that the back gate remain locked. Hill assured Lee that he would enroll the dogs in obedience school and would inform the Animal Shelter when the training was complete. However, Hill never enrolled the dogs in obedience school, and the Animal Shelter never followed up their order. Although Hill did not comply with the administrative order, the Animal Shelter did not seize the dogs or declare them vicious. The Animal Shelter did not receive any further complaints about Hill's dogs until the day of the tragedy of Ms. Stidham's death.

The trial court held that the defendant's actions were not discretionary and, therefore,

were not immune under the Act. The trial court held that the defendant was negligent, and that the negligence was a proximate cause of Ms. Stidham's death. The court stated that the failure to follow-up on the obedience training and the failure to pick up the dogs was an act of negligence. The court also felt that the vicious dog hearing was conducted improperly. However, the court stated that the inadequate inspection of the fence was not a proximate cause of the death. In addition, the court rejected the claim of nuisance because there was no affirmative act by the defendant. Finally, the trial court believed that the defendant assumed a special duty to Ms. Stidham to undertake acts to protect her and negligently failed to take reasonable and appropriate action to do so.

Since this case was tried by the court sitting without a jury, we review the case *de novo* upon the record with a presumption of correctness of the findings of fact by the trial court. Unless the evidence preponderates against the findings, we must affirm, absent error of law. T.R.A.P. 13(d). In *Smith v. Bullington*, 499 S.W.2d 649 (Tenn. App. 1973), this Court noted that the review by this Court of the amount of a non-jury judgment for damages was governed by then T.C.A. § 27-303, which has been supplanted by T.R.A.P. 13(d).

II.

This negligence action was brought pursuant to section 29-20-205 of the Act which provides for removal of immunity for injury caused by negligent acts or omissions of government employees. T.C.A. § 29-20-205 (1980).

In order for plaintiffs to recover, the court must first determine if the city is immune from suit, and if not, the plaintiffs must prove the necessary elements of negligence. *Bowers v. City of Chattanooga*, 826 S.W.2d 427, 429 (Tenn. 1992). With respect to the threshold issue of immunity, section 29-20-205 provides in pertinent part,

> Immunity from suit of all governmental entities is removed for injury proximately caused by a negligent act or omission of any employee within the scope of his employment except if the injury:
> (1) Arises out of the exercise or performance or the failure to exercise or perform a discretionary function, whether or not the discretion is abused;
>
> \*        \*        \*

4

(4) Arises out of a failure to make an inspection, or by reason of making an inadequate or negligent inspection of any property;

(5) Arises out of the institution or prosecution of any judicial or administrative proceeding, even if malicious or without probable cause.

T.C.A. § 29-20-205.

The defendant argues that their actions are included in all three cited sub-sections of T.C.A. § 29-20-205 because the actions are discretionary, a failure to inspect or an inadequate inspection, and arise out of a quasi-judicial or an administrative proceeding. We have three actions of the defendant to consider: (1) the acts during the vicious dog hearing; (2) the inspection of the fencing on the Hill property; and (3) the failure to follow-up the obedience school training and the resulting failure to impound the dogs.

As a preliminary matter, we believe that the actions of Lee during the vicious dog hearing are immune from liability because they arise in an administrative hearing. Lee, sitting as judge, had the opportunity to hear evidence, examine witnesses and hear arguments of informed counsel and interested parties. The parties had the right to appeal his decision but neglected to exercise this right. Even if Lee's actions during the proceeding were negligent, they are immune from liability.

In addition, we will not consider whether the inspection of the fence on Hill's property properly is immune under the Act because the trial court held that the inspection was not a proximate cause of the death. Even if we hold that the inspection is not immune and, therefore, could have been negligent, the evidence does not preponderate against the trial court's finding of no proximate cause. Therefore, the only act of the defendant to consider is the decision not to follow-up and enforce the obedience school requirement, which the defendant argues is a discretionary act for which immunity has not been removed.

In **Bowers**, the Tennessee Supreme Court provided guidance as to which activities fall under the discretionary function and adopted the "planning-operational" test. **Bowers**, 826 S.W.2d at 430. Under the planning-operational test, decisions that rise to the level of planning or policy-making are considered discretionary acts which do not give rise to tort liability, while decisions that are merely operational are not considered discretionary acts and, therefore, do not

5

give rise to immunity. *Id.* The Supreme Court outlined the analysis a court must follow to determine if a decision falls under the discretionary function exception:

> Under the planning-operational test, discretionary function immunity does not automatically attach to all acts involving choice or judgment. Such an analysis recognizes that, to some extent, every act involves discretion. Rather, the underlying policy of governmental immunity is better served by examining (1) the decision-making process and (2) the propriety of judicial review of the resulting decision.
>
> A consideration of the decision-making process, as well as the factors influencing a particular decision, will often reveal whether that decision is to be viewed as planning or operational. If a particular course of conduct is determined after consideration or debate by an individual or group charged with the formulation of plans or policies, it strongly suggests the result is a planning decision. These decisions often result from assessing priorities; allocating resources; developing policies; or establishing plans, specifications, or schedules.
>
> On the other hand, a decision resulting from a determination based on preexisting laws, regulations, policies, or standards, usually indicates that its maker is performing an operational act. Similarly operational are those ad hoc decisions made by an individual or group not charged with the development of plans or policies. These operational acts, which often implement prior planning decisions, are not "discretionary functions" within the meaning of the Tennessee Governmental Tort Liability Act. In other words, "the discretionary function exception [will] not apply to a claim that government employees failed to comply with regulations or policies designed to guide their actions in a particular situation."
> Another factor bearing on whether an act should be considered planning or operational is whether the decision is the type properly reviewable by the courts. The discretionary function exception "recognizes that courts are ill-equipped to investigate and balance the numerous factors that go into an executive or legislative decision" and therefore allows the government to operate without undue interference by the courts.

*Id.* at 431 (citations omitted).

The defendants ask us to rely upon a case decided by the Supreme Court of the State of Florida, *Carter v. City of Stuart*, 468 So.2d 955 (Fla. 1985). In *Carter*, the Florida Supreme Court was faced with a similar issue as in the case *sub judice*. In that case, the City of Stuart was sued after a dog attacked and seriously injured a child. The plaintiff claimed that the city was negligent because it failed to enforce its ordinance requiring impoundment of dangerous dogs. The plaintiff also alleged that the city should have impounded the dog after prior incidents of biting. *Id.* at 956. The Florida Supreme Court, applying the planning-operational test adopted

by Tennessee in **Bowers**, held that the city was immune because the decision not to enforce the ordinance and impound the dog was discretionary. *Id.* at 957. The Court stated the rationale as follows:

> A government must have the flexibility to set enforcement priorities on its police power ordinances in line with its budgetary constraints. Without the ability to make such choices a government must either pay the high cost of total enforcement or forego the exercise of its police power. Neither option serves the public interest.
>
> Deciding which laws are proper and should be enacted is a legislative function. How and in what manner those laws are enforced is, in most instances, a judgmental decision of the executive branch. The judicial branch should not trespass into the decisional process of either.

*Id.*

In the case *sub judice*, the City of Memphis Animal Shelter was understaffed and underfunded. The record indicates that the Shelter made the decision not to follow-up its administrative order because of budgetary and manpower restraints. The Shelter established a lower priority of enforcing this particular order. Although the results are unfortunate for the plaintiff, this is the type of decision that was protected in **Carter** by the Florida Supreme Court. We are impressed with the reasoning of the Florida Supreme Court. Our Supreme Court also recognized the need to balance priorities and allocate resources. **Bowers**, 826 S.W.2d at 431. Decisions that include the allocation of limited resources among competing needs do not need interference from the courts, absent clear guidance from the legislature to the contrary. **Helton v. Knox County**, 922 S.W.2d 877, 887 (Tenn. 1996). Accordingly, we find that the city performed a discretionary function for which it is immune. T.C.A. § 29-20-205(1). However, this finding cannot end our inquiry.

III.

The trial court also decided that the defendants assumed a special duty to the decedent, Ms. Stidham, to undertake actions to protect her from Hill's dogs. The plaintiffs characterize the Animal Shelter's letter and administrative order as a promise to Ms. Stidham that went unfulfilled. The defendant argues that the duty owed by the City of Memphis was to the public, not to a specific individual. The defendant claims that the danger posed by the dogs was to the

public at large, and that the ordinances in place governing vicious animals were enacted for the general welfare. As stated above, the issue to be decided is whether the defendant assumed a special duty to the plaintiff.

In *Ezell v. Cockrell*, 902 S.W.2d 394, 400 (Tenn. 1995), the Tennessee Supreme Court decided that the Act did not abolish the common law public duty doctrine. The Supreme Court said, "[W]e are not persuaded that the Tennessee Governmental Tort Liability Act, which actually reiterates and extends the rule of governmental immunity, abolished, or was intended to abolish, the longstanding common-law public duty doctrine." *Id.*

The public duty doctrine originated at common-law and shields a public employee from suits for injuries that are caused by the public employee's breach of a duty owed to the public at large. *Id.* at 397. A private citizen cannot maintain an action complaining of the wrongful acts of public officials unless such private citizen avers special interest or a special injury not common to the public generally. *Id.* (quoting *Bennett v. Stutts*, 521 S.W.2d 575, 576 (Tenn. 1976)). If the public employee's duty is to the public, then the municipality cannot be held liable. However, if that employee assumes a special relationship with an individual, the municipality can be found liable for that employee's negligent acts. *Ezell,* 902 S.W.2d at 401. The Supreme Court stated,

> States adhering to the public duty doctrine, including Tennessee, have recognized an exception to the rule of no-liability that applies where a "special relationship" exists between the plaintiff and the public employee, which gives rise to a "special duty" that is more particular than the duty owed by the employee to the public at large.
>
> *            *            *
>
> Having decided that the public duty doctrine is viable, we consider it both desirable and necessary to retain, and further refine, the "special-duty" exception. After considering the various formulations of the doctrine, we conclude that a special duty of care exists when 1) officials, by their actions, affirmatively undertake to protect the plaintiff, and the plaintiff relies upon the undertaking; 2) a statute specifically provides for a cause of action against an official or municipality for injuries resulting to a particular class of individuals, of which the plaintiff is a member, from failure to enforce certain laws; or 3) the plaintiff alleges a cause of action involving intent, malice, or

reckless misconduct.

*Id.* at 401-02.

In the case *sub judice*, the only applicable special duty would be when officials affirmatively undertake to protect a plaintiff. There is no special statute; the plaintiff does not allege intent or malice; and the record does not show reckless misconduct. The plaintiffs ask us to follow a case from the State of Washington, *Champagne v. Spokane Humane Society*, 737 P.2d 1279 (Wash. App. 1987). In *Champagne*, a neighbor's pit bull dog brutally attacked the Champagne's child. The Humane Society had previously received numerous complaints concerning these pit bull dogs, including at least ten from Ms. Champagne. *Id.* at 1281. The Humane Society told Ms. Champagne that they would patrol the area and apprehend any stray dogs. Unfortunately, the dogs were not apprehended until the day after the attack. *Id.* at 1282. The Champagnes argued that the special duty exception to the public duty doctrine was applicable to their case. *Id.* In this appeal of a grant of summary judgment to defendant, the court held that there were sufficient facts alleged to establish each element of the special duty exception and reversed and remanded the case. *Id.* at 1284.

The *Champagne* case is similar to the case at bar. In the case *sub judice*, the City of Memphis Animal Shelter sent Ms. Stidham a letter that informed her that the fencing would be corrected and that the dogs would be trained at obedience school. Ms. Stidham was informed that if Hill did not comply with the order, the dogs would be impounded. Because she made no further complaints, the trial court apparently found, inferentially, that she relied upon this assurance. We believe that the Animal Shelter "affirmatively under[took] to protect the plaintiff" and the "plaintiff relie[d] upon the undertaking." *See Ezell*, 902 S.W.2d at 402. Obviously the neighborhood and the public at large would have also benefited from the Shelter's actions for Ms. Stidham. However, this does not mean that the defendant did not assume a special duty to her. We hold that the defendant, City of Memphis, through the actions of the Animal Shelter, assumed a special duty to Ms. Stidham.

However, the plaintiff must still show a breach of that special duty and proximate cause of the injury. *See Haynes v. Hamilton County*, 883 S.W.2d 606, 611 (Tenn. 1994). Obviously this duty was breached because the Animal Shelter did not follow-up on the assurances to Ms.

Stidham. The defendant argues, however, that their actions were not the proximate causes of Ms. Stidham's death, but instead that the criminal conduct and the gross negligence of Hill were the independent intervening proximate causes of the death. The defendant also argues that Ms. Stidham assumed a known risk and was the proximate cause of her own injury and death.

The evidence does not preponderate against the trial court's finding that the failure to follow-up the obedience training requirement and to impound the dogs was a proximate cause of Ms. Stidham's death. The Tennessee Supreme Court has outlined a three-prong test for proximate cause:

> (1) the tortfeasor's conduct must have been a "substantial factor" in bringing about the harm being complained of; and (2) there is no rule or policy that should relieve the wrongdoer from liability because of the manner in which the negligence has resulted in the harm; and (3) the harm giving rise to the action could have reasonably been foreseen or anticipated by a person of ordinary intelligence and prudence.

*Haynes*, 883 S.W.2d at 612. If the Shelter had impounded the dogs like the administrative order required, then the dogs would not have been present to attack Ms. Stidham. Obviously this was a substantial factor in bringing about the harm. In addition, an attack by the dogs and the resulting injury were reasonably foreseeable because of the complaints received by the Shelter concerning Hill's dogs. We believe that there is no merit to the defendant's argument that Ms. Stidham assumed a known risk by walking to the sidewalk to get her mail. The evidence does not preponderate against the trial court's finding on this issue. From the record, we find that defendant owed a special duty to Ms. Stidham, that this duty was breached, and the breach of this duty was the proximate cause of Ms. Stidham's death. The trial court was correct in the judgment for the plaintiff.

IV.

The plaintiff has also presented the issue of whether claims against municipalities arising out of the creation of a nuisance are encompassed within the Act. We have held on previous occasions that a claim of nuisance is covered by the Act. In *Collier v. Memphis Light, Gas & Water Division*, 657 S.W.2d 771, 776 (Tenn. App. 1983), this Court stated, "The legislature left little if any room for doubt that actions against governmental entities for damages based on

activities historically labeled 'nuisance' are now included in and covered by the Act." In that case, we distinguished some of the cases that the plaintiff now relies upon to hold otherwise. *Id.* We believe that the Tennessee Supreme Court case, ***Paduch v. City of Johnson City***, 896 S.W.2d 767 (Tenn. 1995), speaks on this issue. The Supreme Court stated, "[A]n action for damages resulting from the creation or maintenance of a temporary nuisance by a governmental agency may be allowed under the act." *Id.* at 772. We hold again today that an action for nuisance is covered by the Act.

In the case *sub judice*, even if a claim for nuisance was not covered by the Act, we believe that the trial court was correct in its decision that there was no act that constituted the creation of a nuisance by the defendant. The evidence does not preponderate against the trial court's findings on the issue of the creation of a nuisance.

Finally, the plaintiff asks this Court to consider whether the doctrine of sovereign immunity should be discarded by the courts of Tennessee. In ***Austin v. City of Memphis***, 684 S.W.2d 624 (Tenn. App. 1984), this Court, in considering the abolishment of sovereign immunity, said:

> [P]laintiffs urge this court to change [the law of governmental immunity] by virtue of judicial decree. We decline this invitation. As pointed out by Judge Todd in ***Jones v. L & N Railroad Co.***, 617 S.W.2d 164 (Tenn. App. 1981):
>
> > The rule of sovereign immunity in Tennessee is both constitutional and statutory. It is not within the power of the courts to amend it.
>
> *Id.* at 170.

*Austin*, 684 S.W.2d at 637; *see also City of Lavergne v. Southern Silver, Inc.*, 872 S.W.2d 687, 689 (Tenn. App. 1993).

V.

Accordingly, the judgment of the trial court is affirmed. Costs of this appeal are assessed against the appellant.

_____
**W. FRANK CRAWFORD,**
**PRESIDING JUDGE, W.S.**

**CONCUR:**

_____
**DAVID R. FARMER, JUDGE**


_____
**HOLLY KIRBY LILLARD, JUDGE**