IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE

November 3, 2004 Session

## WILL SHATFORD v. SMALLBUSINESS.COM, REX HAMMOCK, and HAMMOCK PUBLISHING, INC.

**An Appeal from the Chancery Court for Davidson County**
**No. 01-2169-I    Irvin H. Kilcrease, Jr., Chancellor**

---

**No. M2003-02315-COA-R3-CV - Filed June 13, 2005**

---

This case is about fraud and negligent misrepresentation.  In the fall of 2000, the plaintiff employee accepted an offer for employment with the defendant's internet company.  Approximately three months after the employee began work, the company became insolvent and closed.  The employee sued the defendant owner of the internet company, asserting that the company owner made false statements to him regarding the financial strength of the company.  The employee sought damages for breach of contract and for fraud and negligent misrepresentation. The employee received a judgment against the company for contract damages related to the employment contract.  The company owner then sought summary judgment on the remaining claims of fraud and negligent misrepresentation.  The trial court granted the company owner's motion for summary judgment, finding that the employee could not, as a matter of law, establish that he had relied on the company owner's statements that were the basis for the claims of fraud and negligent misrepresentation.  The employee appeals.  We reverse, finding that the employee's reasonable or justifiable reliance on the statements was a genuine issue of fact  and thus summary judgment was not proper.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court is Reversed**

HOLLY M. KIRBY, J., delivered the opinion of the Court, in which DAVID R. FARMER, J. AND FRANK G. CLEMENT, JR., J., joined.

Irwin Venick, Nashville, for plaintiff/appellant Will Shatford

Leslie Goff Sanders, Nashville, for defendant/appellees smallbusiness.com, Rex Hammock, and Hammock Publishing, Inc.

### OPINION

Defendant/appellee Rex Hammock ("Hammock") is the founder of Hammock Publishing, Inc. and smallbusiness.com.  In the mid 1990's, Hammock developed an internet based company,

called smallbusiness.com, that allowed small business owners to work together and share ideas. In 1999, Hammock began to turn the concept of smallbusiness.com into an ongoing business. In early 2000, Hammock raised approximately $2.5 million as a first round of financing for the business and began to hire employees. In the summer of 2001, smallbusiness.com began negotiations to raise an additional $3 million in capital. By the fall of 2000, smallbusiness.com was recruiting potential employees for the position of Chief Technology Officer.

Meanwhile, plaintiff/appellant Will Shatford ("Shatford") was working in California for an internet company. Shatford had been approached by other internet based companies interested in employing him. In September 2000, a recruiter working on behalf of smallbusiness.com approached Shatford to discuss possible employment. Shatford first met with the principals of smallbusiness.com, including Hammock, in Nashville at an interview in early October 2000. In this interview, Shatford learned general information about the company and was told that smallbusiness.com had gone through a "first round" of financing and was in the process of securing the "second round" of financing–a $3 million "bridge" loan.[1] However, Shatford was not provided specific financial information at this time.

Later that month, Shatford and his wife, Debra, went to Nashville for a second interview with smallbusiness.com. Shatford spoke to Tom Wylly, the company's Executive Vice President of Finance, Kevin O'Hara ("O'Hara"), its Chief Operating Officer, and Hammock. At this meeting, Shatford was told the general business plan for smallbusiness.com but was not provided any financial information. However, Hammock told Shatford's wife, Debra, that the $3 million in financing was "all lined up." Debra Shatford relayed this information to her husband.

After the second interview, Shatford was offered the position of Chief Technology Officer for smallbusiness.com. In November 2000, Shatford and Hammock negotiated the final details of Shatford's employment agreement. According to Shatford, during these negotiations, Hammock told him that the $3 million in additional financing was "fully subscribed and locked up" and that the company would received $2 million on December 6 and the remaining $1 million by the end of the year. Shatford told Hammock that accepting the position with smallbusiness.com would require him to leave a secure position in California. Shatford says that he asked for and received assurances from Hammock that the $3 million in financing was secure.

On November 4, 2000, Shatford accepted employment with smallbusiness.com. He resigned from his existing position in California the next day, November 15, 2000. Two days later, on November 17, 2000, Shatford received a formal offer letter from smallbusiness.com. Shatford signed and returned the letter and then began preparations to move his family to Nashville. Shatford began regular telephone conversations with smallbusiness.com and was scheduled to begin work in Nashville on January 3, 2001.

---

[1]Apparently the "first round" of financing came from the owner and his friends or family, and the "second round" was to come from small institutional investors.

On December 15, 2000, Shatford received an email from O'Hara, the Chief Operating Officer for smallbusiness.com. The email was in response to a prior email that Shatford sent to O'Hara, raising several issues, including the status of the $3 million bridge loan.[2] O'Hara's reply email stated that the company was in "final negotiations" for a $1 million piece of the $3 million bridge loan. Three days later, on December 18, 2000, Shatford met with Hammock in Nashville. In response to Shatford's questions, Hammock assured Shatford that the full $3 million was committed and would close during the first week of January. Although not completely clear from the record, it appears that Shatford went to Nashville and began work as scheduled on January 3, 2001.

On January 9, 2001, after starting work in Nashville, Shatford learned that the $3 million in financing for smallbusiness.com had not closed. At this time, Shatford was still in the process of moving to Nashville from California and his possessions were scheduled to arrive in Nashville on January 15, 2001. Shatford again asked for and received assurances from Hammock that the financing was secure. Later that month, on January 23, 2001, Shatford and his wife signed a contract to purchase a home in Nashville.

On January 30, 2001, Shatford learned that one of the investors for smallbusiness.com had backed out and that only half of the $3 million loan was finalized. The following day, Shatford, anxious about closing on the purchase of a home while the company financing was incomplete, discussed his concerns with Hammock. Hammock purportedly assured Shatford that even if smallbusiness.com went out of business, Shatford would be employed with Hammock Publishing. Shatford and his wife subsequently closed on their home in Nashville.

By March 2001, after smallbusiness.com experienced further financial difficulties, the company's principals began working on ways to salvage it. In April 2001, approximately half of the employees of smallbusiness.com were laid off. In May 2001, the remaining employees, including Shatford, were laid off. At that time, smallbusiness.com owed Bank of America $2.25 million on a line of credit personally guaranteed by Hammock. Hammock paid off the line of credit and foreclosed on smallbusiness.com. The remaining assets of smallbusiness.com were then transferred to Hammock Publishing.

At the time smallbusiness.com laid off Shatford and the other remaining employees, Hammock told Shatford that employment with Hammock Publishing was not possible. Shatford then requested severance benefits in the amount of $396,933.44, based on the employment agreement between Shatford and smallbusiness.com. Shatford received four weeks of vacation pay but did not receive the remaining $374,308.15 in severance benefits.

In July 2001, Shatford filed suit against smallbusiness.com, Hammock Publishing, Inc., and Rex Hammock in the Chancery Court of Davidson County. The suit alleged that smallbusiness.com and Hammock Publishing were liable for breach of contract and that Rex Hammock was liable for fraud and negligent misrepresentation. Discovery ensued.

---

[2] The record does not show when Shatford sent the email to O'Hara.

In January 2002, Shatford filed a Motion for Partial Summary Judgment against smallbusiness.com on the claim of breach of contract. Subsequently, the trial court granted Shatford's motion for partial summary judgment and awarded him contract damages against smallbusiness.com in the amount of $374,308.15, plus costs.

After completion of discovery, defendants Hammock and Hammock Publishing, Inc. filed a motion for summary judgment, seeking dismissal of Shatford's remaining claims. By an order dated August 11, 2003, the trial court granted the defendants' motion for summary judgment. The trial court held that, as a matter of law, Shatford could not establish that he relied on Hammock's alleged statement relating to the status of the company's financing. The trial court also found that Hammock's promise of future employment did not give rise to a legally recognized claim in Tennessee. As to Shatford's oral contract claim against Hammock Publishing, the trial court found that Shatford could not establish the elements of an oral contract.

Shatford now appeals the trial court's grant of summary judgment on his claims of fraud and negligent misrepresentation against Hammock. Shatford asserts that there is sufficient evidence to show that he relied on Hammock's assurances before he agreed to the offer of employment with smallbusiness.com, and that genuine issues of fact exist as to whether Shatford reasonably relied on Hammock's misrepresentations and whether Shatford suffered damages as a result of his reliance on the misrepresentations.[3]

A motion for summary judgment should be granted when the movant demonstrates that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. Tenn. R. Civ. P. 56.04. The party moving for summary judgment bears the burden of demonstrating that no genuine issue of material fact exists. *Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn. 1997). On a motion for summary judgment, the court must take the strongest legitimate view of the evidence in favor of the nonmoving party, allowing all reasonable inferences in favor of the nonmoving party, and disregarding all countervailing evidence. *Id.* In *Byrd v. Hall*, 847 S.W.2d 208 (Tenn. 1993), our Supreme Court stated:

> Once it is shown by the moving party that there is no genuine issue of material fact, the nonmoving party must then demonstrate, by affidavits or discovery materials, that there is a genuine, material fact dispute to warrant a trial. In this regard, Rule 56.05 [now Rule 56.06] provides that the nonmoving party cannot simply rely upon his pleadings but must set forth *specific facts* showing that there is a genuine issue of material fact for trial.

*Id.* at 211 (citations omitted) (emphasis in original).

Summary judgment is only appropriate when the facts and the legal conclusions drawn from the facts reasonably permit only one conclusion. *Carvell v. Bottoms*, 900 S.W.2d 23, 26 (Tenn.

---

[3]Shatford did not appeal the grant of summary judgment in favor of Hammock Publishing.

1995). Since only questions of law are involved, there is no presumption of correctness regarding a trial court's grant of summary judgment. *Bain*, 936 S.W.2d at 622. Therefore, our review of the trial court's grant of summary judgment is *de novo* on the record before this Court. *Warren v. Estate of Kirk*, 954 S.W.2d 722, 723 (Tenn. 1997).

In the instant case, the trial court held that, as a matter of law, Shatford could not establish that he relied on Hammock's statements. The trial court did not elaborate further on its reasoning. Therefore, we review the evidence in the record in accordance with the standard of review noted above. In opposition to Hammock's summary judgment motion, Shatford presented evidence that, after Shatford's second interview, Shatford and Hammock began to negotiate the final terms of Shatford's employment with smallbusiness.com. Shatford stated in his affidavit that, at that time, Shatford asked for and received assurances from Hammock that the financing was "all locked up." Shatford alleged that Hammock even gave him a specific date–December 6–by which the financing would become available. After receiving an offer letter based on the negotiations, Shatford resigned from his California job. After the exchange of emails between Shatford and O'Hara, Shatford's reliance becomes more questionable. However, viewing the evidence in the light most favorable to Shatford, we find that there is sufficient evidence to create a genuine issue of fact on Shatford's reasonable or justifiable reliance on the financial statements made by Hammock. As such, the grant of summary judgment on this issue was not proper. We must reverse the grant of summary judgment in favor of Hammock on the issue of fraud and misrepresentation and remand the cause for further proceedings.

On appeal, Shatford asks this Court for a determination on whether the reliance on a claim of fraud is "justifiable reliance" or "reasonable reliance." We decline, finding that resolution of this issue is not necessary in order to decide this appeal.

Finally, on appeal, Hammock asserts that Shatford cannot prove that he suffered any damages as a result of fraud or negligent misrepresentation. Hammock cites *Justice v. Anderson County*, 955 S.W.2d 613, 616 (Ten. Ct. App. 1997), and *Sunderhaus v. Perel & Lowenstein*, 388 S.W.2d 140, 144 (Tenn. 1965) for the proposition that when a party enters into an agreement based on false statements, he may elect between the remedies available in a breach of contract action and the remedies available in a tort action. Hammock rightly notes that Shatford has already received a judgment against smallbusiness.com for contract damages and asserts that he can assert no further claim. Hammock points to no place in the record, however, in which the issue of election of remedies was raised to the trial court. Issues not raised to the trial court are not addressed on appeal. *City of Lavergne v. Southern Silver, Inc.*, 872 S.W.2d 687, 691 (Tenn. Ct. App. 1993). As a result, we decline to address the effect of election of remedies on Shatford's claims. This does not preclude the parties from addressing the issue to the trial court on remand.

The grant of summary judgment in favor of defendant/appellee Rex Hammock on the issue of fraud and negligent misrepresentation is reversed, and the cause is remanded for further proceeding not inconsistent with this Opinion. Costs of this appeal are charged to defendant/appellee Rex Hammock, for which execution may issue, if necessary.

_____
HOLLY M. KIRBY, JUDGE